**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

**CIVIL ACTION NO. 05-483-JBC**

**REGINA M. BALLARD,**                                           **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**                    **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on cross-motions for summary judgment in the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 17, DE 22).  The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion, deny the defendant's motion, and remand this matter to the Commissioner for further proceedings.

**I.     Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining liability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which he can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.    The ALJ's Determination

At the time of the ALJ's determination, the claimant was 53 years old, with a high-school education and past work experience as a factory custodian.  (R. at 31.)  The claimant alleges that she became disabled on August 7, 2001, due to

2

neck, shoulder, arm, and lower back problems, migraine headaches, anxiety, and depression. *Id.* The plaintiff filed her first application for Disability Insurance Benefits ("DIB") on December 4, 2001, with a protective filing date of November 14, 2001, which was denied initially and upon reconsideration. *See id.* at 60-63, 66-68. She then requested a hearing that was held on January 16, 2003, before Administrative Law Judge ("ALJ") Peter M. Davenport. *See id.* at 55, 536-49. Following the hearing, the ALJ issued a decision denying the plaintiff's claim for benefits on January 24, 2003. *See id.* at 45-53. The plaintiff then requested review by the Appeals Council, which granted the request and remanded the matter for another hearing on May 14, 2004. *See id.* at 248-51.

On February 23, 2005, the plaintiff's second administrative hearing was held before ALJ Roger Reynolds. *See* R. at 40, 550-76. Following this hearing, the ALJ issued a decision on April 8, 2005, again denying the plaintiff's claim for benefits. *See id.* at 27-38. More specifically, at Step 1, the ALJ determined that the plaintiff "has not engaged in substantial gainful activity since her alleged onset date. *Id.* at 31. At Step 2, the ALJ determined that the plaintiff's neck and back condition, blindness in the right eye, and asthma "are 'severe' within the meaning of the Regulations"; however, the ALJ found that the plaintiff's alleged migraine headaches, anxiety, and depression were not "medically determinable 'severe impairments." *Id.* at 32. At Step 3, the ALJ determined that the plaintiff's severe impairments were "not 'severe enough to meet or medically equal, singly or in

3

combination, one of the impairments listed in Appendix 1, Subpart P, Regulations

No. 4"; nevertheless, at Step 4, the ALJ found that the plaintiff's impairments did

prevent her from "perform[ing] her past relevant work." *Id.* at 32, 35.  The ALJ

found at Step 5, however, that the plaintiff "is capable of performing a significant

range of medium work as defined in 20 C.F.R. §§ 404.1567 and 416.967";

therefore the ALJ concluded that the plaintiff "is capable of making a successful

adjustment to work that exists in significant numbers in the national economy." *Id.*

at 35, 36.  Again, the plaintiff requested review by the Appeals Council, which was

denied on February 24, 2006, resulting in this appeal.

**III.    The Plaintiff's Medical Record**

On August 7, 2001, the plaintiff was treated in the emergency room at

Berea Hospital after a car accident.  *See* R. at 135-141.  X-rays taken at the time

revealed "[d]egenerative changes" in her spine, *see* R. at 140-141, and subsequent

MRI examinations on September 21, 2001, revealed "multilevel disc desiccation,

disc space narrowing, and posterior protrusions at all the cervical vertebrae[,]" as

well as "annular bulging" and "foraminal stenosis," *see* R. at 108-09.

On September 12, 2001, the plaintiff consulted with a neurologist, Dr.

Christa Muckenhausen, in order to address her pain and limited function.  *See* R. at

370-73.  Dr. Muckenhausen conducted a physical examination of the plaintiff and

noted that the plaintiff had difficulty balancing, an unsteady gait, tenderness in her

spine area, and "paraspinal muscle spasms and trigger points." *Id.* at 372.  Dr.

Muckenhausen met with the plaintiff for several additional visits, and after the

4

plaintiff's last visit on March 25, 2003, Dr. Muckenhausen completed a Medical

Assessment form for the plaintiff, limiting the plaintiff to lifting less than 10-12

pounds, standing and walking for less than 15 minutes without interruption, sitting

for less than 30 minutes without interruption, and concluding that the plaintiff

should remain off work because "[s]he is permanently and totally disabled." *Id.* at

332, 338.

Before this final visit, Dr. Muckenhausen referred the plaintiff to at least two

other treating physicians.  First, she referred the plaintiff to a neurosurgeon, Dr.

John Gilbert, who examined the plaintiff on November 7, 2001, after reviewing her

medical records.  *See* R. at 145.  Dr. Gilbert diagnosed the plaintiff with

radiculopathy, a cervical strain sprain, a lumbar strain sprain, and muscle spasms,

and he prescribed Lortab and recommended "injective therapy of her cervical

spine."  Dr. Muckenhausen also referred the plaintiff to Dr. James Templin, who

completed a comprehensive pain report as to the plaintiff and concluded that she

will not "be able to return to her previous work position or engage in activities

requiring bending, stooping, kneeling, pushing, pulling, twisting, turning or

prolonged walking or standing.  While she can perform these activities, I do not

believe she can perform them on a productive regular basis." *Id.* at 310.

In addition, the record also contains evidence from the plaintiff's long-term

treating physician, Dr. Steven Green.  In a letter dated April 9, 2003, Dr. Green

stated that the plaintiff "would not be able to hold out and work in the regular job

market consistently" because of her "limited ability to stand, sit, walk . . . grasp or

5

use her hands for repetitive tasks" and her inability "to lift anymore [sic] than 10 pounds occasionally and anymore [sic] than 4 pounds with any frequency." (R. at 471.) In a subsequent letter, dated June 14, 2004, Dr. Green restated his earlier opinion and restrictions. *Id.* at 446.

Finally, the record contains a physical work-performance evaluation conducted by Bluegrass Physical Therapy, which the plaintiff underwent at the request of her long-term disability insurance carrier. The plaintiff was evaluated by a physical therapist named Kelly J. Dorsey, P.T., on February 10, 2005. *See* R. at 498-505; 528-35. After conducting the performance evaluation, Kelly Dorsey concluded that the plaintiff "is unable to perform even Sedentary Level work as defined by the US Dept. of Labor in the DOT." *Id.* at 528.

## IV.   Legal Analysis

The plaintiff objects to the ALJ's determination because it "is contradicted by the findings of every physician who has treated or examined the plaintiff." (DE 17-2 at 8.) The Commissioner does not contest this claim, nor does the Commissioner offer any direct responses to the plaintiff's present arguments. Instead, the Commissioner suggests that a remand under sentence four of 42 U.S.C. § 405(g) "would be appropriate for the following reasons": first, "to re-evaluate all opinion evidence from the treating and examining physicans and specifically articulate what weight was given to each opinion"; second, "to reassess the claimant's residual functional capacity"; and third, "if necessary," to "hold a supplemental hearing and obtain evidence from a medical expert and vocational expert." (DE 22-1 at 1-2.)

6

The court will consider these arguments and suggestions in turn.

### A.    The ALJ's Failure to Credit the Plaintiff's Physicians' Opinions

According to the Commissioner's own regulations, if "a treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment or impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a claimant's record, the Social Security Administration "will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).  The Sixth Circuit has repeatedly held that the opinions of a treating physician are entitled to significant deference. *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).  When a treating physician's medical opinion is uncontradicted, the Sixth Circuit has further held that it is entitled to complete deference. *See, e.g.*, *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings. *See, e.g.*, *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  For example, in the absence of evidence supporting a worsening of a claimant's condition, the Secretary is justified in rejecting the opinion of a treating physician which is contrary to a previously expressed opinion by the same treating physician. *Stanley v. Sec'y of Health & Human Servs.*, 39

7

F.3d 115, 118 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

But in any case, an ALJ must give good reasons for rejecting the opinion of a

treating physician.  *Wilson*, 387 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating source is not accorded controlling weight, in order to

determine the proper weight to give the opinion, the ALJ must consider factors

such as the length of the treatment relationship and the frequency of examination,

the nature and extent of the treatment relationship, the supportability of the

opinion, the consistency of the opinion with the record as a whole, and the

specialization of the source.  *Wilson*, 378 F.3d at 544.

     Few if any of these steps were taken in this matter.  Instead, the ALJ simply

asserted, without citation to the record, that the opinions of the plaintiff's treating

physicians (and consulting physical therapist) were inconsistent.  The ALJ then

relied upon the assessments of two non-examining, non-treating state agency

doctors, both of which state that the plaintiff retains the capacity for medium-level

work.  As the Sixth Circuit has held, however, the testimony of these physicans

"cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating

physicians since 'the opinion of a nonexamining physician is entitled to little weight

if it is contrary to the opinion of the claimant's treating physician.'"  *Shelman v.

Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (quoting *Broughton v. Heckler*, 776

F.2d 960, 962 (11th Cir. 1985) (per curiam)).  Because the opinions of the

plaintiff's treating physicians were well-supported and consistent with other

evidence in the record, and because the evidence relied upon by the ALJ cannot

provide a sufficient basis for rejecting the opinions of these treating physicians under the Sixth Circuit's standard, the court finds that the ALJ erred in rejecting these opinions and reaching his conclusion.

**B.    Outright Award of Benefits**

Having found that the ALJ's decision denying the plaintiff's claim was not supported by substantial evidence, the court must now determine whether it should remand this case to the Commissioner for further consideration or for an award of benefits.  If a court determines that substantial evidence does not support such a decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985) ("In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.").

After reviewing the record, the court finds that there is no need to remand this matter for the purposes suggested by the Commissioner.  Instead, the court finds that remanding this action and directing an award of benefits is most appropriate.  The plaintiff has presented the court with an overwhelming amount of evidence showing that she is completely disabled, and the ALJ's justifications for rejecting her treating physicians' opinions and her own testimony are unsupported

9

in the record.  Further, the record contains little or no evidence that would support a finding that the plaintiff is not disabled.  No need exists for further opinions or hearings: Two hearings have occurred, and non-treating doctors have been consulted.  Under the circumstances, the court cannot conclude that on remand, substantial evidence would support a finding that the plaintiff does not suffer from a disability.

**V.    Conclusion**

Because the reasons the ALJ provided for rejecting the opinions of the plaintiff's treating physicians run counter to the clear direction of the relevant regulations and Sixth Circuit precedent, his finding that the plaintiff can perform a significant number of jobs in the national economy is not supported by substantial evidence.  The court further finds that the evidence of the plaintiff's disability is overwhelming, and an outright award of disability benefits is therefore appropriate. Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 17) is **GRANTED**, the Commissioner's administrative decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner for an award of disability benefits.

Signed on March 30, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

11